# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PARTHENON UNIFIED MEMORY ARCHITECTURE LLC, <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | § § § § § § § § § § § Case No. 2:15-cv-00621-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Defendant Apple Inc.'s ("Apple") Motion to Transfer Venue from the Eastern District of Texas to the Northern District of California (Dkt. No. 22). Apple argues that this case should be transferred to the Northern District of California. Plaintiff Parthenon Unified Memory Architecture LLC ("Parthenon") opposes transfer. After considering the evidence and weighing the factors, the Court finds that Apple has not shown this case should be transferred.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re*

*Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**ANALYSIS**

The Parties disagree on the relevance and involvement of third-parties in this case. Parthenon has accused some Apple products of infringing the asserted patents when they used the memory architecture of the A7 processor in Apple's iOS products. Apple claims there are no third-party witnesses relevant to this case because Apple has produced all the accused technology and products at its headquarter in Cupertino, California. Parthenon claims that STMicroelectronics, Inc. ("ST Micro") originally owned the asserted patents and it allegedly has evidence that relates to Apple's defenses. Parthenon further claims Samsung manufactures chips for Apple products in Austin, Texas and it allegedly has evidence that relates to Parthenon's claims of infringement, making Eastern District of Texas the more convenient forum for third-party witnesses and documents.

**A.      Proper Venue**

Neither party disputes that the Eastern District of Texas and the Northern District of California are proper venues.

**B.      Private Interest Factors**

**1.      Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Apple claims the Northern District of California is an overwhelmingly more convenient forum because the primary research and design of the accused technology, as well as the vast majority of the design, development, marketing, and sales of the accused products are centered in

the Northern District of California. Dkt. No. 22-20 ¶ 2-4, 8; Dkt. No. 68 at 2. Apple's corporate representative is not aware of any Apple engineers, third party witnesses, or documents related to the accused technology in the Eastern District of Texas. Dkt. No. 22 at 2, 7; Dkt. No. 22-20 ¶¶ 26-29. Apple further asserts Parthenon has no meaningful presence to the Eastern District of Texas because Parthenon makes nothing, has no employees, and shares the same office with at least 50 other subsidiaries. Dkt. No. 68 at 2-3; Dkt. No. 68-2 at 8:21-23; Dkt. No. 68-2 at 21:7-9. The privilege log produced by Parthenon shows 78 entries, and only one individual is actually affiliated with Parthenon. Dkt. No. 68-1 ¶ 11; Dkt. No. 68-4 at 2-8. Work being done on behalf of Parthenon occurs mostly in California, and relevant documents are likely in California. Dkt. No. 68-1 ¶¶ 9, 11. Even if documents are available in Texas, they are easily accessible from California. Dkt. 68-1 ¶ 20; Dkt. No. 68-2 at 15:20-19:5.

Parthenon claims Apple has hundreds of design engineers at its Austin, Texas facility with knowledge of the system-on-chips ("SoC") used in the accused products. Dkt. No. 52 at 4. Parthenon further asserts many of the A-series chips at issue in this case are manufactured by Samsung at its fabrication facilities in Austin and relevant documents relating to the architecture of the A-series chips would likely be located at Samsung's facility in Austin. Dkt. No. 52 at 4, 6; Dkt. No. 52-1 at 47-48; Dkt. No. 72 at 6. Parthenon claims Apple's motion to transfer venue also overlooked STMicro's evidence and witnesses located in Coppell, Texas,[1] Dkt. No. 52 at 5, and it needs STMicro's documents to address Apple's defenses. *Id*. Parthenon finally claims that it has "sources of proof [that] are located in this judicial district." Dkt. No. 52 at 10; Dkt. No. 72 at 2-3.

---

[1] Coppell, Texas is partly in Denton County which is in the Eastern District of Texas.

Apple claims STMicro does not have significant documents to affect the venue analysis. Dkt. No. 68 at 4. Holly Hernandez confirmed in her 30(b) (6) deposition for Parthenon that STMicro has not been subpoenaed in any of its cases. Dkt. No. 68-2 at 38: 18-25. Hernandez testified that after litigation had commenced between Parthenon and other defendants in related cases, Parthenon did not reach out to STMicro for help locating documents. Dkt. No. 68-2 at 39:6-15. At the time Parthenon filed its action against Apple, there were cases already pending in the District relating to the same asserted patents. Dkt. No. 52 at 13. In its response to Apple's motion, Parthenon anticipates that Apple will raise the same disputed terms and arguments in this case. *Id.* Apple rebuts this assertion stating that there are very few issues that implicate STMicro, and documents for those few issues are likely already in Parthenon's possession. Dkt. No. 68 at 4-5.

Parthenon's evidence shows that STMicro's documents are likely in Coppell, and those documents are likely relevant to Apple's defenses of prosecution history estoppel, implied license, and unenforceability. Dkt. No. 36 ¶¶ 35-36; Dkt. No. 52 at 5. Although Apple asserts three of the four witnesses Parthenon identified as having relevant documents from STMicro are in-house counsel and unlikely to have non-privileged documents, this assertion does not rebut Parthenon's showing that its evidence is in this District. Dkt. No. 68 at 4.

Apple claims Samsung's activities in Austin are not relevant to this case and should not affect venue analysis. Dkt. No. 68 at 5. Apple argues the technology at issue represented in Parthenon's infringement contentions is directed to the memory architecture itself, not everything that uses memory.[2] Dkt. No. 68 at 5. Apple claims to communicate only with

---

[2] Apple claims its A-series processors are "systems-on-a-chip" ("SoC") that include a large variety of functionality housed within the chip, including the CPU core, GPU, decoders and switch fabrics. Dkt. No. 68 at 5 FN. Teams at Apple independently develop these technologies,

Samsung Korea or its U.S. office in San Jose, and there is no interaction between Apple and Samsung's Austin facility. Dkt. No. 68-1 ¶¶ 10, 34. Parthenon rebuts this claim noting Samsung manufacturers a significant number of the Apple chips and would have Apple's RTL and source code required for the manufacturing processes. Dkt. No. 52 at 9. Parthenon further argues that even if Apple only communicates with Samsung Korea, Apple's technical information concerning the manufacture of the A-series would logically "flow" from Korea to Samsung's Austin facility, where the chips are actually manufactured, thus implicating relevant documents exist in Austin. Dkt. No. 52 at 10; Dkt. No. 72 at 6. In addition, Apple's corporate representative confirmed Apple and Samsung both contributed to the design of the A4 through A6 processors until Apple became the sole contributor in the A7 generation and onward. Dkt. No. 52-1 at 49-52. This indicates Samsung likely has relevant evidence of the accused technology and products and played a bigger role than merely manufacturing the chips using Apple's design.

As to the Parties, Parthenon has shown that its own evidence is in this District. Parthenon's parent corporation, Acacia Research Group LLC ("Acacia Research"), has had offices here since at least 2011. Dkt. No. 52 at 10; Dkt. No. 52-33 at 2. Although Apple asserts that Parthenon and Acacia Research are both subsidiaries of a California entity, this assertion does not rebut Parthenon's showing that its evidence is in this District. Dkt. No. 52 at 2; Dkt. No. 72 at 2-3.

Finally, it is unclear how much evidence Apple has in Texas. Apple claims the memory architecture/switch fabric team led by Sukalpa Biswas in Cupertino is responsible for the overall design of the A-series processor. Dkt. No. 22-20 ¶ 15. The IP Design-Media Design team led

---

and the teams responsible for the integration and overall design of the chip are in Cupertino. Dkt. No. 68-1 at 8-9; Dkt. No. 22-20 ¶¶ 14-21.

by Hao Chen in Cupertino is responsible for integrating the video decoder into the Apple switch fabric and memory architecture. *Id.* at ¶ 18. The video engineering group in California led by Vaidy Mani handles the software drivers for video decoders used in the A-series processors. *Id.* at ¶ 20. Apple further asserts there are no Apple engineers outside of California who are responsible for developing the memory architecture for Apple's A-series processors. Dkt. 52-1 at 72:22-73:3. Yet, Apple's corporate representative states there is technical work provided outside of Cupertino regarding Apple memory architecture or the Apple switch fabric for the A-series processors, Dkt. No. 52-1 at 45:1-17, and presumably the code, schematics, and other technical details would be kept locally for easy access. Dkt. No. 22-20 ¶ 25. Apple insists the graphic processing unit ("GPU") team in Austin is not responsible for integrating the GPU unit within the memory architecture, Dkt. No. 68 at 6; Dkt. No. 69-5 ¶¶ 4-8; Dkt. 69-6 ¶¶ 4-9; Dkt. No. 69-7 ¶¶ 4-9, and insofar as Chuck Pope's team has any documents, those documents would pertain to their work on the GPU, not the accused technology. Dkt. No. 52-1 at 25-26; 66:6-17. However, Apple cannot dispute that information does transmit through the Austin office, especially in Pope's role as liaison with Imagination Technologies.

Parthenon claims that Apple's work in Texas is relevant to this case because it relates to the technical work performed directly on the chip components that are explicitly identified in Parthenon's infringement contentions. Dkt. No. 72 at 5. Parthenon states the GPU integration performed in Austin is important because the "asserted patents are generally directed toward the sharing of memory by two devices in the context of multimedia decoding." Dkt. No. 52 at 6. Parthenon asserts in certain disclosed embodiments, the multimedia decoder shares the memory with the graphics accelerator, identifying the GPU. *Id.* at 7. Parthenon further claims Pope has relevant information concerning the integration of the GPU into the A-series chip, and he also

has relevant information concerning Imagination Technologies' integration of the video decoding technology into each of the accused products in his role as Apple's liaison. Dkt. No. 72 at 5. Because the decoding technology is referenced in the '789 patent, '464' patent, '368 patent and the '405 patent, Pope's testimony would be relevant. Dkt. No. 72 at 5-6. Apple disputed this claim in its reply. *See* Dkt. No. 68 at 5 ("The technology at issue is not anything that uses memory – the [accused] technology is directed to the memory architecture itself and how it functions to allow multiple devices to share memory. This is what [Parthenon] told this Court, has represented in its contentions, and has said in IPR proceedings."). *See* also Dkt. No. 52 at 6 (Parthenon admits the asserted patents "are generally directed toward the sharing of memory.")

This factor, on the whole, weighs slightly against transfer. Parthenon has shown that it has evidence in the Eastern District of Texas. Apple has shown that its documents are more accessible from the Northern District of California. However, because STMicro's and Samsung's involvement remains disputed, and both third-parties have connections to Texas, Apple has failed to show the relative ease of access to sources of proof clearly favors transfer.

### 2. Cost of Attendance for Willing Witnesses

Apple claims important third party witnesses are overwhelmingly located in California. Dkt. No. 68 at 2. There are four inventors listed on one or more of the seven patents-in-suit, and three of the inventors still reside in California, including two inventors in the Northern District of California. Dkt. No. 22 at 12; Dkt. No. 22-1 ¶ 8. Apple also claims to have implemented a shared memory architecture in its products far earlier than the filing date of any of the patents-in-suit, and those prior art inventors still reside in the Northern District of California. Dkt. No. 22 at 12-13. Apple states all foreseeable Apple witnesses are in California and would need to travel

substantial distance from Cupertino to the current venue, which creates enormous scheduling obstacles and inconvenience to the witnesses. Dkt. No. 22 at 10.

Apple further claims Imagination Technologies, the only relevant supplier that Apple contracts with regarding the accused technology, is a foreign corporation and has its U.S. headquarters in Santa Clara. Dkt. No. 22 at 7, 12; Dkt. No. 52-1 at 38:11-17. Apple argues that to the extent third-party discovery will be propounded against Imagination Technologies, it will likely be done in the Northern District of California or in the United Kingdom. Dkt. No. 22 at 12. Parthenon rejects this argument stating Imagination Technologies witnesses will have to travel a significant distance whether they testify in California or Texas, and to the extent they are considered, travel to the Eastern District of Texas would still be more convenient than the longer journey to Northern District of California. Dkt. No. 52 at 12.

Parthenon claims that STMicro's witnesses, like its documents, are in Coppell. Dkt. No. 52 at 5, 12; Parthenon also claims that the named inventors, STMicro witnesses, and its own witnesses could attend a trial in Marshall with ease. *Id.* at 12; Dkt. No. 52-26 at 2; Dkt. No. 52-27 at 2; Dkt. No. 52-28 at 2; Dkt. No. 52-29 at 2; Dkt. No. 52-30 at 2. Parthenon further argues that to the extent the named inventors are called to testify at trial, they are likely to do so in each of the related cases currently pending in this District. *Id.* Transferring this case will likely subject such nonparty witnesses to the discovery process in multiple courts, compounding the inconvenience to such witnesses. *Id.* Apple does not dispute that Parthenon's CEO, Mr. Marvin Key works in this District. Dkt. No. 68-2 at 22:6-10; Dkt. No. 68-2 at 28:11-12, 29:8-12; Dkt. No. 129-1 ¶ 4.

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court

must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012).

"A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

Apple claims the asserted patents all relate to a shared memory architecture, Dkt. No. 22 at 3; Dkt. No. 52 at 6, and unlike other related cases which involve chips designed by a third party, Apple has developed all the accused technology and its products in the Northern District of California. Dkt. No. 22 at 7. The teams in Austin are not implicated by the design of Apple's memory architecture even if some of the engineers might generally know how the memory architecture works. Dkt. No 68 at 6-7.

Parthenon identifies 15 witnesses in Apple's Austin facility, including Chuck Pope[3], Kip Fluitt, Rob Kenney, and Steven Sullivan[4] as having relevant knowledge relating to the design and architecture of the A-series chips and the accused products. Dkt. No. 52 at 8. Fluitt, Kenney, and Sullivan each signed a declaration rebutting Parthenon's assertion and denied

---

[3] Pope is Apple's liaison with Imagination Technologies. Dkt. No. 52 at 7. Parthenon claims Pope has relevant information concerning the integration of the GPU into the A-series chips and Imagination Technologies' video decoding technologies into each of the accused product in this case. *Id.*

[4] Parthenon claims Fluitt, Kenney, and Sullivan as former Intrinsity employees would have knowledge and responsibilities relating to the GPU, CPU, and general SoC for Apple's processor. Dkt. No. 52 at 8.

having relevant knowledge on the accused technology. Dkt. No. 69-5 ¶¶ 4-8; Dkt. 69-6 ¶¶ 4-9; Dkt. No. 69-7 ¶¶ 4-9.

As to the remaining third-party witnesses, Apple has shown that it would be more convenient for three named inventors to attend trial in Northern District of California but Parthenon has shown that it would be more convenient for five STMicro witnesses to attend trial in Marshall.[5] Parthenon cannot dispute that several named inventors live in California. Dkt. No. 22 at 12. Apple does not dispute that STMicro's witnesses work in Coppell. *See* Dkt. No. 52 at 5. To the extent that transfer to the Northern District of California would be convenient for Apple's witness, Parthenon has shown that the Eastern District of Texas would be more convenient for STMicro, Samsung, and its own witnesses. This factor does not clearly favor transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Rule 45 provides that this Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if that person "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). This Court also may command a person to attend a deposition "with 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses do not require compulsory process, and the Court's analysis of this factor focuses on third-party witnesses for whom compulsory process to attend trial might be necessary.

The Eastern District of Texas has subpoena power over five STMicro witnesses. The Northern District of California has subpoena power over three of the named inventors and three prior art inventors. Dkt. No. 22 at 12-13. Neither district has subpoena power over Samsung's

---

[5] Parthenon also has evidence that one of the named inventors will willingly attend trial in Marshall. Dkt. No. 52 at 12; Dkt. No. 52-35 at 2-3.

witnesses in Austin nor Seed IP Law Group, the prosecuting firm located in Seattle, Washington. Dkt. No. 22-1 ¶ 9; Dkt. No. 22-9 at 2. This factor weighs is neutral on transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that judicial economy weighs against transfer because when Apple filed this motion, seven related cases involving the same patents and technology were pending before the Court. *See, e.g.*, *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("The district court could properly consider the benefits to judicial economy arising from having the same judge handle both Oasis' suits against the petitioners and Oasis' suits against other parties involving the same patents and technology as to which there was no issue of transfer."). Parthenon argues this Court had already conducted three claim construction hearings and issued an order construing relevant claim terms in one of the cases. Dkt. No. 72 at 6. Each of those three claim construction hearings involved substantially the same set of terms. *Id.* Subsequent settlements have occurred in related cases prior to Apple's motion. This Court has familiarity with the asserted patents and a genuine interest in keeping the claim constructions consistent on the same set of terms. Transferring this case at the current juncture would waste significant judicial resources and give rise to potentially conflicting claim constructions. This factor weighs strongly against transfer.

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

The Court finds this factor is neutral as to transfer. The time to trial in this District and the Northern District of California is similar. Dkt. No. 22 at 14. Apple filed this motion three months after it received the summons and before the Parties exchanged infringement and

invalidity contentions. Dkt. No. 22 at 14-15. This case was not consolidated with any other matter and Apple has not had a chance to argue claim construction. *Id.* at 15.

### 2. Local Interest in Having Localized Interests Decided at Home

The Court finds this factor is neutral as to transfer. Four named inventors reside in California, and one of the inventors has agreed to attend trial voluntarily in Texas. Dkt. No. 22 at 12; Dkt. No. 52 at 12. Apple has facilities in both Austin and Cupertino. Dkt. No. 22 at 2; Dkt. No. 68 at 6. Parthenon operates in Texas and is related to a California company. Dkt. No. 55 at 10; Dkt. No. 72 at 2. Neither party can dispute that both Texas and California have an interest in this case.

### 3. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties do not dispute that these factors are neutral as to transfer. Dkt. No. 22 at 16; Dkt. No. 52 at 15.

## CONCLUSION

A motion to transfer venue should only be granted upon a showing that one venue is "clearly more convenient" than another. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this case should remain in the Eastern District of Texas because transfer to the Northern District of California would not be "clearly more convenient" especially given the Court's familiarity with the asserted patents and the related cases involving the same asserted patents.

Apple's Motion to Transfer (Dkt. No. 22) is therefore **DENIED**, and Apple's Motion to Stay Pending Motion to Transfer (Dkt. No. 61) is **DENIED AS MOOT**.

**SIGNED this 9th day of August, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE